300    APPELLATE COURT OF INDIANA,

Illinois Cent. R. Co. v. Fairchild—48 Ind. App. 300.

## ILLINOIS CENTRAL RAILROAD COMPANY v. FAIRCHILD.

[No. 6,734. Filed May 17, 1910. Rehearing denied November 29, 1910. Transfer denied June 29, 1911.]

1. CONTRACTS.— Releases.— Consideration.— Contradicting.— Railroads.—Negligence.—A recital in an alleged release of a claim against a railroad company, that the consideration for such release was the sum of $250, may be contradicted by proof of the true consideration. p. 301.

2. MASTER AND SERVANT.—Railroad.—Injuries.—Releases.—Promise of Work.—Where a servant was injured by a railroad company and the company's claim agent offered him $250 and a "lifetime job" for a release, and the instrument of release, which failed to mention the "lifetime job," was sent to him for execution, and he refused to execute it but wrote to the claim agent who answered that he had nothing to do with positions and that plaintiff "could not expect" anything until the release was signed, and that after the release was signed such agent would take up the matter of employment and see if anything could be done, and the plaintiff took the release to the superintendent who told the plaintiff to sign the release and he would get the money and also the job, the jury was warranted in finding that the company agreed to give the money and the position for such release. p. 302.

3. MASTER AND SERVANT.— Railroads.— Injuries.— Releases.— Consideration.—Repudiation of Part.—Estoppel.—A railroad company agreeing to give its injured servant $250 and a "lifetime job" in consideration of a release cannot insist upon the validity of such release and at the same time deny its agents' authority to offer an injured servant a "lifetime job." p. 304.

From Superior Court of Vanderburgh County; *Alexander Gilchrist*, Judge.

Action by Chester Fairchild against the Illinois Central Railroad Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*J. E. Williamson* and *John G. Drennan*, for appellant.
*Frank B. Posey* and *William D. Hardy*, for appellee.

ROBY, J.—The complaint is in one paragraph. It is averred therein that appellee was in appellant's service as

MAY TERM, 1911. 301

Illinois Cent. R. Co. v. Fairchild—48 Ind. App. 300.

yard brakeman, and while engaged in said work received injuries that resulted in the loss of a leg. It is further averred, that on January 30, 1905, defendant promised to pay plaintiff, in full settlement and satisfaction for said injury and damage, the sum of $250, to reëmploy him, and to give him permanent employment from March 1, 1905, for and during the period of his natural life, at such labor as he should have the ability to perform, and to pay him a reasonable and fair compensation therefor; that defendant required, as a condition to said promise and agreement, and as a further consideration therefor, that plaintiff should execute a release to defendant, releasing it from all liability for damages and all claims and rights whatever growing out of said injury, and relinquishing all claims and rights to bring suit therefor; that plaintiff agreed to the terms of said contract of settlement, and thereafter did execute and deliver to defendant said release, which was accepted by defendant as a fulfilment of said contract by plaintiff.

The complaint then alleges that on August 1, 1905, defendant employed plaintiff; that on January 10, 1906, defendant wrongfully discharged plaintiff, and has ever since refused, and still refuses, to reëmploy him, and that plaintiff was able, ready and willing to continue in the service of defendant.

The issue was made by a denial. A trial by jury resulted in a verdict and judgment for $1,800, which was reduced by a remittitur to $1,200.

Appellant introduced in evidence a written instrument, by the terms of which appellee released it from liability for damages. The consideration for such release is 1. stated, by way of recital, to be $250. The true consideration was, therefore, under all the authorities, open to proof. *Pennsylvania Co.* v. *Dolan* (1893), 6 Ind. App. 109; *Stewart* v. *Chicago, etc., R. Co.* (1895), 141 Ind. 55; *Indianapolis Union R. Co.* v. *Houlihan* (1901), 157 Ind. 494, 54 L. R. A. 787.

The evidence supports the allegations of the complaint. Appellee lost his leg while in appellant's service.  He lived at Evansville, and subsequently went to Chicago, 2.  where he had an interview with appellant's general claim agent, who proposed to give him $250 and "a lifetime job," in consideration of a release.  Appellee seems to have been more concerned about the job than the money, and returned home with the understanding that the release, voucher and a letter to the assistant superintendent at Evansville, with regard to the employment, would be there almost as soon as he was.  The voucher and release were handed to him in a few days, but the letter to the superintendent was not with them.  He did not execute the release, but later wrote to the claim agent, calling his attention to the fact that a position was soon to be vacant, which he could fill, but that the official having authority told him that it was partly promised.  The concluding part of the letter was as follows:

"You know it is not everything I can do, the shape I am in.  I am ready to work at any time.  Please have them place me as soon as possible, as I need the work, Mr. Losey.  I received voucher February 6.  Still holding it, waiting for information in regard to job.  Hope you will attend to this at once, and oblige,
Chester Fairfield."

In answer to this, the claim agent wrote that he had nothing to do with furnishing positions to employes; that he had not promised appellee a position, further stating: "I had no authority to make any such promise, and never do.  *  *  * However, you could not expect to be placed at work until you had executed a release.  This release is embraced in the voucher, and I do not see any purpose in holding it.  After you have advised me that you have executed the release and cashed the voucher, I will take the matter up with Mr. Sheuing, and see whether it is consistent for him to do anything for you."

Appellee went to the superintendent who dipped a pen in

ink and said: "Sign that and go down and get the money, and you will get the job. The job is ready for you as soon as you sign this release." He still did not sign, and the superintendent called the freight agent, and told him to take appellee over to the freight office and show him the job he was to have. The freight agent went with him, and in his presence interviewed one of the clerks, to whom he said that appellee was a cripple, and that we will have to look out for him and give him a job. The clerk said he was willing to change to something else paying equally as well, and the freight agent said to appellee: "Now you be ready to go to work on March 1. I will make a change with Mehling [the clerk], and put you in his place." The release was signed on February 28. Appellee was not put to work March 1, but began in August. He kept the place five or six weeks, was then transferred to another place, and in January was given a job at Mattoon, Illinois, which required him to do work that he could not do in his crippled condition, since which time employment has been refused.

These facts are not only shown by the evidence of appellee, but are largely in the record though the testimony of the other persons concerned, and the finding is not only in accord with the evidence, giving it the view that is most favorable to appellee, as we are required to do, but it is in accord with the overwhelming weight of evidence.

Appellant's principal contention is that the contract was made with the claim agent, and that his letter, denying his authority to make such a contract, conclusively shows that the essential meeting of minds never took place and, therefore, no contract was ever made. This is too narrow a view. The claim was that the contract was made by appellant corporation, and the evidence clearly shows that through the representations and promises of employment by appellant's agents, acting within the scope of their respective duties, appellee was induced to execute the release in question. Indeed, the letter of the claim agent does not bear the con-

struction placed upon it by counsel. The denial referred to is instantly qualified by "However, you cannot expect to be placed at work until you have executed a release."

The implication that the execution of the release would procure the employment is irresistible, and when taken with the subsequent statements and actions of those who did have authority "to furnish positions to employes," the letter comes very far from sustaining the contention. It is suggested that what was said and done with regard to employment was said and done as a matter of humanity to a faithful and unfortunate employe. The suggestion does not accord with what was done in that regard after the release had been procured.

That the consideration for the release included the promise of employment being proved, the principle expressed by the maxim "he who derives the advantage ought to

3. sustain the burden" applies, and appellant, while it holds and asserts the release, cannot refuse to pay the price for which it was given. *American Car, etc., Co.* v. *Smock* (1911), *post*, 359; *Meridian Life, etc., Co.* v. *Eaton* (1908), 41 Ind. App. 118.

Various minor matters are mooted, but none of them is of controlling importance.

The judgment is affirmed.