## HENRY J. HECKLER *v.* BALTIMORE & OHIO RAILROAD COMPANY

[No. 15, April Term, 1934.]

*Decided June 13th, 1934.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE and SLOAN, JJ.

*Charles G. Watson, for the appellant.*

*Taylor Morrison,* with whom was *A. Taylor Smith* on the brief, for the appellee.

ADKINS, J., delivered the opinion of the Court.

The questions in this case are raised by demurrer to the declaration, which alleges:

That the defendant is a common carrier engaged in interstate commerce and was prior to 1915 operating a railroad with shops in Cumberland for building and repairing its equipment; that the plaintiff was employed by the defendant to work in its said shops and was engaged in the repair of interstate engines, and while so engaged was severely injured by having one of his legs cut off in or about the year 1915. "That the said defendant, by its claim agent, Walter Harrig and its attorney, Col. George A. Pearre, after suit was brought and before trial thereof, arranged a settlement with the plaintiff on the following terms and conditions: that the plaintiff was to accept the sum of three thousand nine hundred dollars in cash and that the plaintiff would be given steady employment by the defendant during the plaintiff's life, or so long as he was able to do work of any kind about the shops or railroad; that the plaintiff was paid the said three thousand nine hundred dollars, and was given his regular employment as soon as he was able to work, working at the repair of engines until the 31st day of December, 1929, at which time the defendant informed him he was

furloughed, and since which time the defendant has given the plaintiff no work; that the plaintiff was employed for eight hours per day at fifty-seven cents per hour, working on said engines; that the plaintiff did his work satisfactorily without any complaint whatever by the defendant; that he was able at the time of his furlough to fully perform his duties as an employee of the said defendant, always has been and still is capable of performing the said duties; that the agreement on the part of the defendant to give the plaintiff regular employment was considered the major portion of the consideration for making the settlement for the injury to the plaintiff for the loss of his leg; that the defendant has refused to further perform its part of the contract pertaining to the employment of the plaintiff, while the plaintiff has always been ready and willing to perform his part of said contract, and the said defendant has given the plaintiff to understand that it does not intend to further perform its part of the said contract." The suit is brought for the alleged breach of the contract. It is contended by appellee that the declaration does not state a good cause of action.

The only defect in the declaration seriously urged is that it fails to allege express authority in the agent from the board of directors to make the contract sued on, or a ratification thereof by said board after knowledge that it had been made. It may be conceded that, by the weight of authority, there is ordinarily no implied authority in a claim agent or attorney to make a contract for life employment. But in our opinion the allegation that "the said defendant, by its claim agent, Walter Harrig and its attorney, Col. George A. Pearre * * * arranged a settlement with the plaintiff. * * *" is in effect a statement that the *defendant* made the settlement, and that the named agents were acting by its authority and direction. Whether they did or not is a matter of proof.

In all the cases but one cited by appellee the questions involved were of proof and not of pleading. *Carroll v. Manganese Steel Safe Co.*, 111 Md. 252, 73 A. 665; *Mc-*

*Gowan v. Finola Mfg. Co.*, 120 Md. 335, 87 A. 694; *Carney v. N. Y. Life Ins. Co.*, 162 N. Y. 453, 57 N. E. 78; *Maxson v. Michigan Central R. R. Co.*, 117 Mich. 218, 75 N. W. 459; *Nephew v. Michigan Central R. R. Co.*, 128 Mich. 599, 87 N. W. 753; *Hornick v. Union Pac. R. Co.*, 85 Kan. 568, 118 P. 60; *Bohanan v. Boston & Maine R. R.*, 70 N. H. 526, 49 A. 103; *Cleveland, etc., Ry. Co. v. Green*, 126 Ohio St. 512, 186 N. E. 365.

The only case cited in which the pleadings appear to have been passed on is *Heaman v. E. N. Rowell Co., Inc.*, 261 N. Y. 229, 185 N. E. 83, where the court said:

"The question is whether an allegation in the complaint that an oral contract of employment for life by a corporation was made through its president, can be upheld as sufficient in law. That a contract for employment for life, if authorized by the corporation and based on an adequate consideration, will ordinarily be sustained admits of no dispute." Citing several cases. "Alleged contracts of life employment are, however, so unusual as to have been, with rare exceptions, condemned by the courts as unreasonable and unauthorized. The president or other executive officer of a corporation has no authority as such to make a contract that one should remain in the corporate employ for life even under a general power 'to appoint, remove and fix the compensation of employees.' That any board of directors or other persons responsible for the management of a corporation should give such unusual power to an executive officer cannot be implied. Plain language of the managing board, clearly showing that such was the intention of the corporation, coupled with power actually or impliedly vested in the corporation itself, must be found to justify such a hiring." Citing *Carney v. New York Life Ins. Co., supra,* and other New York cases.

"The complaint does not suggest that the board of trustees of the defendant corporation ever authorized or ratified the contract set forth in the complaint. Plaintiff rests entirely on the affirmative allegation that the contract was made 'through the president.' If the plaintiff

proved the facts alleged and nothing more he would fail to establish a cause of action. He would establish an unauthorized contract of hiring, not enforceable against the corporation.

"It was not necessary to allege that the hiring was 'through the president.' Although it was unnecessary, it was not improper (*Calvo v. Davies,* 73 N. Y. 211, 29 Am. Rep. 130), and the whole pleading must be considered in determining whether it states a cause of action."

It will be seen from the last few lines quoted that if the words "through the president" had not been used the complaint would have been held sufficient. It is susceptible of argument that the expression used in the case cited is distinguishable from that in the case at bar. But if the language used in the complaint in the case cited is to be taken to be equivalent to that used in the declaration in the present case, then we are unable to go as far as was gone in the case cited. We do not think that the allegation in the present case is equivalent to an allegation that "the claim agent and the attorney of the defendant arranged a settlement with the plaintiff." If that language had been used it might well be held, assuming that authority could not be implied, that authorization or ratification must be alleged. But it is certainly reasonable to construe the allegation actually made to mean that the *defendant* made the settlement, and that the claim agent and the attorney were the agents used to carry out the instructions of the board of directors. So construing the allegation, it would be for the plaintiff to prove that the defendant did make the settlement by an agent or agents properly empowered to make it; or that the settlement made was ratified by the defendant. Of course a corporation can act only through agents, and the fact that the agents by whom it acts are named should not be held to modify the allegation that the *defendant* made the settlement; or be taken to mean that the agents named *assumed* authority to act for the corporation; but should rather be construed to mean that the officers named were the agents by whom the corporation elected to act.

Whether the names of the agents were given or not, it would be necessary to prove through whom the corporation acted in making an oral contract. Holding as we do that the declaration alleges that the settlement was made by the corporation itself, we have not found it necessary to discuss the question whether a contract of employment made in settlement of a damage suit for personal injuries incurred in the service of a corporation, by an agent with apparent authority to settle the claim, is an exception to the general rule as to the necessity for express authority to make a contract for life employment. This question is ably discussed in *F. S. Royster Guano Co. v. Hall* (C. C. A.) 68 Fed. (2nd) 533. There a number of cases are cited which recognize such an exception.

But the judgment appealed from must be affirmed because, in the opinion of the majority of the court, with which Judge Urner and the writer do not agree, the contract set out in the declaration is unenforceable for lack of definiteness, in that it fails to fix specifically either the work or the pay.

The question has been discussed in many cases in relation to varying contracts, among which are those cited in the notes to 55 L. R. A. 170; 8 L. R. A. (N. S.) 435; 35 A. L. R. 1432; 87 Am. St. Rep. 840; Ann. Cas. 1916E, 175. Also, *Smith v. Safe Co.* (Sup.) 115 N. Y. S. 204; *Rape v. Mobile & O. R. R. Co.* 136 Miss. 38, 100 So. 585; *Jackson v. Ill. Cent. R. Co.*, 76 Miss. 607, 24 So. 874; *Rhoades v. Ches. & Ohio R. Co.* 49 W. Va. 494, 39 S. E. 209; *Carnig v. Carr*, 167 Mass. 544, 46 N. E., 117; *Fisher v. Roper Lumber Co.*, 183 N. C. 485, 111 S. E. 857; *F. S. Royster Guano Co. v. Hall, supra.* See, also, *Middendorf, Williams & Co. v. Alexander Milburn Co.*, 134 Md. 388, 107 A. 7; *Williston on Contracts* sec. 39; *Brennan v. Employer's Liability Assurance Corp.*, 213 Mass. 365, 100 N. E. 633.

The case will be remanded in order that the plaintiff may have an apportunity to amend his declaration if the facts warrant such amendment.

*Judgment affirmed, with costs, and case remanded.*