## ESTHER KOLODNEY *v.* KOLODNEY BROTHERS, INC.

SUPERIOR COURT      HARTFORD COUNTY      FILE No. 110478

Memorandum filed April 24, 1959

*Ralph C. Dixon,* of Hartford, with whom was *Abraham Silver,* of New Britain, for the plaintiff.

*Joseph Adinolfi, Jr.,* of Hartford, for the defendant.

PHILLIPS, J. This was a companion suit with *Esther Kolodney, Administratrix* v. *Kolodney Bros., Inc.,* Superior Court, Hartford County, No. 113511, and *Esther Kolodney, Administratrix* v. *Abraham Kolodney,* Superior Court, Hartford County, No. 110480, and the three suits were tried together. It was agreed by counsel that the evidence in each of these suits should be considered by the court in the other suits so far as relevant and admissible, and particularly that evidence affecting the credibility of witnesses in any one suit could be considered by the court in weighing the credibility of those same witnesses in the other suits. The three memorandums of decision should be read together.

This action is based upon an alleged oral contract between the plaintiff and the defendant corporation, acting through its president, Samuel Kolodney, to pay the plaintiff a pension of $100 per week for the rest of her life upon the death of her husband, Samuel Kolodney. The plaintiff's case rests almost entirely upon conversations which she testified that she had with her deceased husband as president of the defendant corporation. These conversations were admitted into evidence by the court as verbal acts which, if believed, might constitute a contract. 6 Wigmore, Evidence (3d Ed.) § 1770.

The plaintiff worked for Kolodney Brothers, or Kolodney Brothers Hardware Company, from 1927 to January, 1940, at a salary of $25 per week. On January 20, 1940, her marriage to Samuel Kolodney, which had taken place secretly in 1933, was announced. Thereafter she worked for the company without salary. The first of the alleged conversations occurred at the store on Sunday, June 28, 1949. The plaintiff protested to her husband of the volume of work she was doing and stated that she was quitting. Her testimony was that he then said, "Now look, as long as I am here you have to work, and if anything happens to me, you don't have to worry. You will continue with my salary." In answer to further questioning by her counsel, she testified that he said, "You will continue with my salary as long as you live." She testified to another conversation with her husband in the presence of Ralph Kolodney in July, 1950, to the same effect. Ralph Kolodney denied that the events and the conversations of June 28, 1949, and July, 1950, took place. Abraham denied that Samuel ever had any conversation with him about such a contract.

Immediately after Samuel's death on October 9, 1953, the plaintiff was paid $100 a week, the amount which Samuel had been receiving. These payments

were continued until March 1, 1957, at which time, because of an altercation between the plaintiff and the two surviving Kolodney brothers, they were stopped. About a week after Samuel's death, the plaintiff testified, she was assured by Ralph, during a call made by Ralph and Abraham and their wives, that the plaintiff did not have to worry, that she would always continue to get $100 a week. A different version was placed upon this interview by the defendant's witnesses.

The issue is thus largely to be resolved by the credibility of the witnesses, bearing in mind the rules concerning burden of proof. The credibility and accuracy of the plaintiff's testimony are open to question for the reasons stated in the memorandum of decision in *Kolodney* v. *Kolodney,* Superior Court, Hartford County, No. 110480, third count, to which reference is made. The credibility of the Kolodney brothers is open to even more serious question for the reasons stated in the memorandum of decision in that case. Other circumstances are to be considered as bearing upon the question whether Samuel Kolodney really made the statements attributed to him or intended to bind the company by a contract to pay plaintiff a life pension.

It was stipulated by counsel that the present value to the plaintiff of the right to receive $100 per week for the rest of her life from March 1, 1957, was $56,000, and that she had already received $16,400 as of that date, and that the net worth of the company as of October 9, 1953, was $166,500. It is highly unlikely that Samuel Kolodney as president, or the company, would make an arrangement which would expose the company to payments of well over one-third of its net worth, and particularly without formal action of the directors and a written instrument of some kind. There was no entry of any kind in the minutes of the directors' meetings of any such

arrangement with Esther Kolodney. This is of considerable significance, in spite of her testimony that Samuel had instructed her never to put anything of importance in the minutes. Considering the whole situation, the court cannot accept the testimony of the plaintiff that Samuel Kolodney, on behalf of the company, agreed to pay her a pension for life upon his death.

Even were the plaintiff's testimony to be accepted as face value, the defendant corporation would not be bound by Samuel Kolodney's arrangement. An officer of a corporation has no implied authority to bind it by a contract of employment or a pension for life. To justify a finding of such authority, there must be proof that there was definite authority, by by-law, action by the board of directors or otherwise, to make such a contract. *Heaman* v. *E. N. Rowell Co.,* 261 N.Y. 229; *General Paint Corporation* v. *Kramer,* 57 F.2d 698; *Rennie* v. *Mutual Life Ins. Co.,* 176 F. 202; *Alabama Mills, Inc.* v. *Smith,* 237 Ala. 296; *Lee* v. *Jenkins Bros.,* 156 F. Sup. 858. The requisite authority could only be derived from action of the board of directors, acting as such. No evidence was produced to show any such delegation of authority by the directors to Samuel Kolodney. *Hurd* v. *Hotchkiss,* 72 Conn. 472. The payments made to the plaintiff after Samuel's death were a family arrangement to take care of the widow and were not made by virtue of a contract by the defendant company.

Judgment for the defendant.